UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                    No.: 1:18-cr-176

     v.                               Hon. Janet T. Neff
                                     United States District Judge

BABUBHAI BHURABHAI RATHOD,

               Defendant.

_____/

## PLEA AGREEMENT

This constitutes the plea agreement between Babubhai Bhurabhai Rathod and the United States Attorney's Office for the Western District of Michigan.   The terms of the agreement are as follows:

1.      <u>Defendant Agrees to Plead Guilty</u>.   The Defendant gives up the right to Indictment by grand jury and agrees to plead guilty to the Felony Information charging health care fraud in violation of Title 18, United States Code, Section 1347, and aggravated identity theft in violation of Title 18, United States Code, Section 1028A.

2.      <u>Defendant Understands the Crime</u>.   In order for the Defendant to be guilty of violating Title 18, United States Code, Section 1347, the following must be true: (1) the Defendant knowingly and willfully executed a scheme to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) the scheme related to a material fact or included a material misrepresentation or concealment of a material fact; and (3) the Defendant had the intent to defraud.

In order for the Defendant to be guilty of violating Title 18, United States Code, Section 1028A, the following must be true: (1) the Defendant knowingly used; (2) the means of

identification of another person; (3) without lawful authority; (4) during and in relation to a felony violation contained in 18 U.S.C. § 1028A(c), including wire fraud in violation of 18 U.S.C. § 1343.

The Defendant is pleading guilty because the Defendant is guilty of the charges described above.

3.    The Defendant Understands the Penalty.    The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347, is the following: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000.00, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.00. The statutory sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A is the following: two years' imprisonment, consecutive, in addition to the punishment imposed under any other provision of law. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4.    Mandatory Restitution (MVRA).    The Defendant understands that he will be required to pay full restitution as required by law.

5.    Asset Forfeiture and Financial Accountability.    The Defendant consents to the entry of a money judgment in an amount representing the proceeds the Defendant obtained, directly or indirectly, as a result of the offense charged in Count One of the Felony Information. The amount of the money judgment will be agreed upon by the parties prior to sentencing or determined by the Court at an appropriate hearing. The Defendant agrees that this sum is forfeitable pursuant to 18 U.S.C. § 982(a)(7). If the parties agree to the amount of the money

2

judgment, the Defendant agrees to the entry of an order of forfeiture for a money judgment at or before the time of sentencing. In addition:

a. The Defendant agrees to disclose to law enforcement officials the whereabouts of, Defendant's ownership interest in, and all other information known to the Defendant about all monies, property or assets of any kind (including funds and assets held by third parties), that the Defendant obtained, directly or indirectly, as a result of the health care fraud offense charged in the Felony Information.

b. The Defendant further agrees to assist and cooperate in the recovery of all monies, property, or assets derived from, or acquired as a result of the health care fraud offense charged in the Felony Information.

c. The Defendant also agrees that the United States shall be entitled to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) if any of the circumstances described in Paragraph 2 and its sub-paragraphs (a)-(e) of the Forfeiture Allegation to the Felony Information arise.

d. The Defendant further agrees, upon the U.S. Attorney's Office's request, to execute and deliver to the U.S. Attorney's Office a completed financial statement in a format supplied by the U.S. Attorney's Office that truthfully and completely discloses the Defendant's assets, including any such assets held by third parties.

e. The Defendant agrees to provide and/or consent to the release of the Defendant's tax returns for the previous seven years.

f. The Defendant agrees to undergo any polygraph examination the United States may choose to administer concerning the Defendant's assets and the information the Defendant supplies

3

on the financial statement referenced in subparagraph (d).

   g.  The U.S. Attorney's Office agrees that information provided by the Defendant with respect to Asset Forfeiture will not be used to enhance the Defendant's sentence, in accordance with Sentencing Guideline § 1B1.8.   However, it is expressly understood that such information may be used by the government at sentencing to seek enhancement of the Defendant's sentence if the government learns of information about the Defendant's assets that is contradicted by the information provided by the Defendant in accordance with the Defendant's obligations under this section.

   h.  The parties further agree that the Defendant should receive credit against the money judgment sought by the United States (1) for all funds the Defendant pays as restitution with the Clerk of Court; (2) for any funds that are applied to restitution under 18 U.S.C. § 3664(j)(2); or (3) if substitute property is forfeited under 21 U.S.C. § 853(p).   In those events, the U.S. Attorney's Office agrees to submit a restoration request to the Department of Justice Asset Forfeiture and Money Laundering Section for the application of any proceeds from payment of restitution, the recovery of compensatory damages that are applied to restitution under 18 U.S.C. § 3664(j)(2), or forfeited substitute property towards the Defendant's restitution order.   The Defendant acknowledges that the Department of Justice Asset Forfeiture and Money Laundering Section has the sole authority to grant or deny the restoration request and that the submission of such a request by the U.S. Attorney's Office does not guarantee that such request will be granted.

   6.  <u>Factual Basis of Guilt</u>.   The Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

4

Health Care Fraud, 18 U.S.C. § 1347

On or about August 13, 2013, the Defendant was convicted of a conspiracy to violate the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).  *United States v. Rathod*, No. 1:12-cr-17 (W.D. Mich.).  As part of his sentence in that case, the Court imposed a special condition of supervised release that "[t]he defendant shall not operate, partner, and/or oversee any business where services are billed to Blue Cross Blue Shield of Michigan, Medicaid, and Medicare."  In a parallel civil settlement agreement, executed on or about June 21, 2013, the Defendant further agreed, with the U.S. Department of Health and Human Services, Office of Inspector General, to a 20-year exclusion from participation in federal health care programs.  *United States, et al. ex rel. West v. Lakeshore Home Health Care, Inc., et al.*, No. 1:11-cv-1051 (W.D. Mich.).

The Defendant was released from federal custody, and began his term of supervised release, on or about June 24, 2016.  The Defendant knew that, under the conditions of his supervised release, he was prohibited from operating, partnering with, or overseeing any business that billed services to Blue Cross Blue Shield of Michigan, Medicaid, or Medicare.  The Defendant also knew that his criminal conviction and exclusion from federal health care programs would be material to any decision, by the Medicare and Medicaid programs, to enroll or extend billing privileges to any health care provider that the Defendant owned, operated, or controlled.

The Defendant thus undertook a scheme whereby he intentionally misrepresented and concealed his ownership or control of four health care providers—Advanced Medical Services, PLLC (d/b/a Advanced Sleep Diagnostics of Michigan) ("AMS"), Sleep Diagnostics of Michigan, P.C. ("Sleep Diagnostics"), EZ Sleep Supplies, LLC ("EZ Sleep"), and Paramount Home Care, Inc. ("PHC")—in order to obtain or maintain enrollment and billing privileges in the Medicare and Medicaid programs.  Specifically:

- AMS and Sleep Diagnostics.  The Defendant directed the creation of AMS on or about July 5, 2016.  AMS, registered in the Western District of Michigan, was organized to take over the business of Sleep Diagnostics, which operated sleep study clinics, including in the Western District of Michigan.  The Defendant put AMS in the name of another individual, thus concealing his ownership and control of AMS, and his criminal conviction and exclusion, in Medicare and Medicaid enrollment documents (CMS Form 855B, *e.g.*).  The Defendant controlled Sleep Diagnostics through his ownership and control of AMS.  Sleep Diagnostics, an existing company registered in the name of another individual, failed to notify the Medicare and Medicaid programs of this change in control over its business operations.  The Defendant then conducted business on behalf of AMS and Sleep Diagnostics using the names of their nominal owners and managers, as well as other aliases.

- EZ Sleep.  The Defendant funded the acquisition of EZ Sleep from its two legacy owners and participated in the negotiations for that purchase using the alias "Chuck."  The Defendant directed that the acquisition of EZ Sleep, registered in the Western District of Michigan, be completed in the name of another individual, acting on behalf of a holding company that was registered to a third person.  The Defendant put EZ Sleep in the name of another individual and knowingly caused EZ Sleep to conceal his authority over the company's business affairs, and his criminal conviction and exclusion, in Medicare and Medicaid enrollment documents (CMS Form 855S, *e.g.*) and state licensing materials.  The Defendant then conducted business on behalf of EZ Sleep using the name of its nominal owner and manager, as well as other aliases.

- PHC.  The Defendant funded the acquisition of PHC from its legacy owner and participated in the negotiation for that purchase under his own name.  The Defendant, however, directed that the corporate transaction be completed in the name of another individual, acting on behalf of a holding company that was registered to a third person.  While the transaction documents required the parties to notify the Medicare program of the change in ownership, no such documents were ever submitted or filed.  The Defendant conducted business at and on behalf of PHC using his own name, the name of PHC's nominal owner, and other aliases.

As part of the Defendant's scheme, he falsely reported, to the U.S. Probation Office, working full-time for an import-export company, Elite Global Group Exim, LLC, in the Western District of Michigan.

The Defendant knew that the omissions and misrepresentations he made, or caused to be made, were material to AMS, Sleep Diagnostics, EZ Sleep, and PHC's eligibility for participation, or continued participation, in the Medicare and Medicaid programs.

The Defendant maintains that, enrollment and participation issues aside, AMS, Sleep Diagnostics, EZ Sleep, and PHC were legitimate providers that provided and billed for medically necessary services to patients.  The government does not concede the legitimacy of these providers or that any services provided were medically necessary or billed appropriately.

Aggravated Identity Theft

In order to conceal his involvement in the operations of AMS, the Defendant assumed different identities and used certain aliases.  On or about October 13, 2016, the Defendant, acting in the Western District of Michigan, submitted an application for loan funding on behalf of AMS to Dynamic Capital, a Florida-based

6

loan broker.  The Defendant applied for funding using the name, address, date of birth, Social Security Number, and driver's license of another person, A.A.

On or about January 5, 2017, the Defendant further used the name, address, and Social Security Number of A.A. to execute a loan agreement with Merchant Capital Group, LLC (d/b/a Greenbox Capital).  In that loan agreement, the Defendant falsely stated that, among other things, all of the information in the agreement was true, correct, and complete, that AMS would "not commit fraud," and that "the proceeds of the [loan] will be used for business purposes only, and not for personal, family or household purposes."  In order to obtain the Greenbox Capital loan, the Defendant further executed necessary ancillary documents using A.A.'s name and address.  These documents included an Affidavit of Confession of Judgment that rendered A.A. personally liable for any default under the Greenbox Capital loan.

The Defendant knew that concealing his identity, his criminal conviction and exclusion, and the impact of his conviction and exclusion on AMS's business (including the company's participation in federal health care programs) would be, and was, material to Greenbox Capital's decision to extend loan funding to AMS.  The Defendant further used wire communications in interstate commerce to apply for and obtain loan funding from Greenbox Capital.

On or about January 12, 2017, AMS received $69,200.00 in funding from Greenbox Capital.  On or about January 12, 2017, the Defendant moved $49,000.00 in Greenbox Capital loan proceeds to an Elite Global account controlled by the Defendant.  That same day, the Defendant wired $42,000.00 of the Greenbox Capital loan proceeds from the Elite Global account to an entity in India for personal reasons.  The Defendant contends that the Greenbox Capital loan proceeds were repaid and that the outstanding balance is $0.00.

7.     The Defendant Agrees.

         a.     Cooperation in Criminal Investigations.  The Defendant agrees to fully

cooperate with the U.S. Department of Health and Human Services, Office of Inspector General,

the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the

charges contained in the Felony Information, as well as the investigation of crimes over which

they have actual or apparent jurisdiction.  The Defendant's cooperation will consist of all steps

needed to uncover and prosecute such crimes, including, but not limited to, providing investigators

with a full, complete and truthful statement concerning the Defendant's knowledge of any and all

7

criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the Defendant's possession or under the Defendant's control, including, but not limited to, objects, documents, and photographs.

The Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which the Defendant should reasonably know will assist in the investigation of other criminal activity. The Defendant will not commit any criminal offense during the course of his cooperation with the United States. The Defendant will submit to polygraph examinations upon request. The Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which the Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

b. Exclusion From Participation. The parties agree that, pursuant to Title 42, United States Code, Section 1320a-7, upon conviction the Defendant will be mandatorily excluded from participation in any federal health care program as defined in Title 42, United States Code, Section 1320a-7b(f), for a period of twenty years. This exclusion period shall be in addition, and run consecutive, to the twenty-year exclusion to which the Defendant agreed in 2013.

8. The United States Attorney's Office Agrees.

a. Acceptance of Responsibility. The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to the Defendant's request if it subsequently learns

of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

The parties understand that they may litigate, at sentencing, the application of an enhancement for obstructing or impeding the administration of justice under Section 3C1.1. Regardless of whether the Court applies that enhancement, the Government (1) agrees not to oppose the Defendant's request for a reduction in his offense level for acceptance of responsibility under Section 3E1.1(a); and (2) will move the Court for the additional one-level reduction under Section 3E1.1(b), if the Court reduces the Defendant's offense level for acceptance of responsibility and the Defendant's adjusted offense level is 16 or greater.

b.   <u>Non-Prosecution Agreement (Defendant)</u>.   The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against the Defendant in the Western District of Michigan arising out of

- False statements and/or material omissions in enrollment applications, licensing applications, and supporting materials that Advanced Medical Services, PLLC, Sleep Diagnostics of Michigan, P.C., and EZ Sleep Supplies, LLC submitted to any health care benefit program;

- Paramount Home Care, Inc.'s failure to disclose events concerning its eligibility for continued benefits under any health care benefit program;

- The Defendant's use of the means of identification of other individuals in order to conduct business, obtain business benefits for, and obtain personal benefits through Advanced Medical Services, PLLC, Sleep Diagnostics of Michigan, P.C., EZ Sleep Supplies, LLC, and Paramount Home Care, Inc.;

9

- The Defendant's receipt or use of (1) any health care insurance reimbursements that Advanced Medical Services, PLLC and Sleep Diagnostics of Michigan, P.C. received on or after July 5, 2016; (2) any health care insurance reimbursements that EZ Sleep Supplies, LLC received on or after March 24, 2017; and (3) any health care insurance reimbursements that Paramount Home Care, Inc. received after September 15, 2017;

- The Defendant's solicitation of remuneration in return for referring patients, or arranging for patients to be referred, for home health care services payable by federal health care programs;

- The Defendant's involvement in the direction, preparation, or submission, to the Internal Revenue Service, of an Asset Purchase Agreement between Sleep Diagnostics and AMS dated July 18, 2016; and

- The Defendant's solicitation of false medical records, and the Defendant's causing those records to be submitted to the Bureau of Prisons, in an attempt to enroll in the Residential Drug Abuse Program at FCI Milan

provided that the conduct is disclosed to the Government by the Defendant or his attorney prior to the date of this agreement. The Defendant shall remain subject to prosecution for any criminal activity he has failed to disclose to the Government prior to the date of the agreement. This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

c.   Non-Prosecution Agreement (Defendant's Wife). The U.S. Attorney's Office agrees to forbear from bringing criminal charges against the Defendant's wife, Shaila Rathod, based on the information known to the Government as of the date of this agreement. This promise of non-prosecution agreement, however, does not extend to crimes of violence, if any, criminal tax violations (including conspiracy to commit such violations chargeable under 18

10

U.S.C. § 371), civil proceedings, or administrative proceedings.

        d.    <u>Prison Placement</u>.  The U.S. Attorney's Office will not object to a request by the Defendant that the Court recommend that the Defendant be confined at any particular institution.  Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

        e.    <u>Possibility of Sentence Reduction Motions</u>.  The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure.  The Defendant fully understands that such a motion may be made pursuant to law if, and only if, the Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others.  The determinations of whether the Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office.  The Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence.  Additionally, the Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion.  Furthermore, if the Court were to grant the motion, the Court, not the Government, would decide how much of a departure or sentence reduction the Defendant receives based upon the nature and extent of Defendant's assistance.  The Defendant acknowledges and agrees that the Defendant may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

9.      The Sentencing Guidelines.  The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant.  The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed.  The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement.  The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

10.     The Parties Jointly Agree to the Following:

a.      Stipulations Regarding Guideline Factors.  The Defendant and the U.S. Attorney's Office agree and stipulate to the following applicable Sentencing Guidelines factors:

| | |
|---|---|
| Base Offense Level: 6 | U.S.S.G. § 2B1.1(a)(2) |
| The loss to Government health care programs is less than $1,000,000.00. | U.S.S.G. § 2B1.1(b)(7) |

There are no other stipulations about Guideline factors and the Defendant and the U.S. Attorney's Office each reserve the right to argue that additional specific offense characteristics, adjustments, and departures are appropriate.

b.      Stipulations Regarding Criminal History.  There is no agreement as to the Defendant's criminal history or criminal history category.

c.      Stipulations Not Binding in Court.   The Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.   Both the Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence.   The Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, the Defendant cannot, for that reason alone, withdraw his guilty pleas.

11.      There is No Agreement About the Final Sentencing Guidelines Range.   The Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range.   Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

12.      Waiver of Constitutional Rights.   By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.   As a result of the Defendant's guilty pleas, there will be no trial.   At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

a.      The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

b.      The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

13

c.    The right to confront and cross-examine witnesses against the Defendant.

d.    The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.    The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

f.    By pleading guilty, the Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

13.    <u>Waiver of Other Rights.</u>

a.    <u>Waiver</u>.  In exchange for the promises made by the government in entering this plea agreement, the Defendant waives all rights to appeal or collaterally attack the Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

b.    <u>Exceptions</u>.  The Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

1.    the Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

2.    the Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

3.    the district court incorrectly determined the Sentencing Guidelines range, if the Defendant objected at sentencing on that basis;

4.    the Defendant's sentence is above the Sentencing Guidelines range

14

as determined by the court at sentencing or is substantively unreasonable;

          5.      the guilty plea was involuntary or unknowing;

          6.      an attorney who represented the Defendant during the course of this criminal case provided ineffective assistance of counsel.

If the Defendant appeals or seeks collateral relief, the Defendant may not present any issue in the proceeding other than those described in this subparagraph.

          c.      <u>FOIA Requests</u>.  The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

          d.      <u>Hyde Waiver.</u> The Defendant acknowledges, by his voluntary admissions of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

      14.      <u>Denaturalization</u>.  The Defendant understands that the convictions in this case may subject the Defendant to denaturalization if the Defendant is a naturalized United States citizen.

      15.      <u>The Court is not a Party to this Agreement</u>.  The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty pleas, and he will remain bound to fulfill all his obligations under this agreement.  The

Defendant understands that no one—not the prosecutor, the Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

16.    <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.   This agreement applies only to crimes committed by the Defendant.   This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

17.    <u>Consequences of Breach</u>.   If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement.   In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.   In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant.   The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

18.     <u>This is the Complete Agreement</u>.   This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.   No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

ANDREW BYERLY BIRGE
United States Attorney

_8-9-18_
Date

ADAM B. TOWNSHEND
RAYMOND E. BECKERING III
Assistant United States Attorneys

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

_AuGuST 9, 2018_
Date

BABUBHAI BHURABHAI RATHOD
Defendant

I am Babubhai Bhurabhai Rathod's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_August 9, 2018_
Date

DAVID A. DODGE
Attorney for Defendant

17